[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12816
_____

D.C. Docket No. 9:13-cv-80831-KAM

ALTMAN CONTRACTORS, INC.,
a Florida corporation,

Plaintiff - Appellant,

versus

CRUM & FORSTER SPECIALTY INSURANCE COMPANY,
an Arizona company,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 2, 2016)

Before JORDAN and FAY, Circuit Judges, and FRIEDMAN,[*] District Judge.

_____

[*]The Honorable Paul L. Friedman, United States District Judge for the District of
Columbia, sitting by designation.

JORDAN, Circuit Judge:

In 2003, the Florida Legislature enacted Chapter 558 of the Florida Statutes, establishing a notice and repair process to resolve construction disputes between property owners and contractors, subcontractors, suppliers, or design professionals. The Florida Legislature said it passed Chapter 558 because it was "beneficial to have an alternative method to resolve construction disputes that would reduce the need for litigation as well as protect the rights of property owners." Fla. Stat. § 558.001.

In this appeal, we must decide whether Chapter 558's statutorily prescribed notice and repair process constitutes a "suit" under a commercial general liability (CGL) insurance policy, so as to trigger the insurer's duty to defend. Remarkably, in the 13 years since the enactment of Chapter 558 no Florida court (or federal court sitting in diversity) has addressed this important issue in a reported decision.

After reviewing the briefs submitted by the parties and *amici curiae*, and with the benefit of oral argument, we believe that we would greatly benefit from the guidance of the Florida Supreme Court on the meaning of the policy language at issue here and its relationship to Chapter 558. As a result, we certify a dispositive question of law to the Florida Supreme Court.

2

**I**

Generally, pursuant to Chapter 558's notice and repair process, a property owner (the claimant) must serve a written notice of a claim on the contractor, subcontractor, supplier, or design professional (for ease of reference, the contractor), describing the nature of the alleged construction defect. *See* Fla. Stat. § 558.004(1). Chapter 558 prescribes time periods for the contractor to inspect the defect or engage in destructive testing to determine the nature and cause of the defect; to serve a copy of the notice of claim on any additional parties the contractor believes may be responsible for the defect; and to serve a written response that offers to remedy the defect at no cost to the claimant, offers to compromise and settle the claim, or disputes the claim. *See* §§ 558.004(2)–(5).

Chapter 558 provides that, upon request, the claimant and the contractor shall exchange various materials pertaining to the alleged construction defect, including design plans, specifications, photographs and video, expert reports, and maintenance records. *See* § 558.004(15). The parties have 30 days to provide the requested materials, and "[i]n the event of subsequent litigation, any party who failed to provide the requested materials shall be subject to such sanctions as the court may impose for a discovery violation." *Id.*

If the contractor disputes the claim and will neither remedy the defect nor compromise and settle the claim, or if the contractor fails to respond to the notice

within the prescribed time period, the claimant may proceed with a civil action or arbitration proceeding against the contractor. *See* §§ 558.004(6), 558.002. The claimant may proceed to trial only as to alleged construction defects noticed in accordance with Chapter 558. *See* § 558.004 (11).

## II

The appellant, Altman Contractors, Inc., served as the general contractor for the construction of a high-rise residential condominium in Broward County, Florida. ACI purchased seven, consecutive, one-year CGL insurance policies from the appellee, Crum & Forster Specialty Insurance Company. Those policies were in effect from February 1, 2005, through February 1, 2012, and are the same in all relevant respects.

The CGL policies state:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "*suit*" seeking those damages. However, we will have no duty to defend the insured against any "*suit*" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

D.E. 36-1 at 9 (emphasis added).[1]

---

[1] According to the American Insurance Association and the Florida Insurance Council, appearing as *amici curiae*, this policy language comes from standard commercial general liability forms drafted by the Insurance Services Office, an industry organization that

And the policies define the term "suit" as follows:

"Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

*Id.* at 23.

In April of 2012, the condominium served ACI with a notice of claim pursuant to Chapter 558, alleging the existence of various construction defects and deficiencies that resulted in property damage. The condominium served several supplemental notices of claims later in 2012 and in 2013. We refer to these claims as the "Chapter 558 notices."

In January of 2013, ACI sent a demand letter to C&F notifying the insurer of the Chapter 558 notices and demanding that C&F defend and indemnify ACI. C&F denied that it had a duty to defend ACI because the matter was "not in suit." On August 5, 2013, C&F advised ACI that it maintained its position that the matter did not meet the policies' definition of "suit," but that it was nonetheless exercising

---

promulgates standard insurance policies that are used by insurers throughout the country. *See* Br. of American Ins. Ass'n *et al*. at 2.

its discretion to participate in ACI's response to the Chapter 558 notices and, in doing so, had hired counsel for ACI.  C&F did not consult with ACI concerning its choice of counsel.  Nor did C&F reimburse ACI for the attorney's fees and costs it had incurred prior to C&F's retention of counsel.  On August 21, 2013, ACI filed this lawsuit against C&F.

In Count I, ACI sought a declaration that C&F owed it a duty to indemnify and a duty to defend and to cover the claims asserted against ACI by the condominium in the Chapter 558 notices.  In Count II, ACI asserted a breach of contract claim based on C&F's initial refusal to defend ACI in the Chapter 558 process.

The parties filed competing motions for summary judgment.  As on appeal, the determinative issue was whether the Chapter 558 process constitutes a "suit" under the CGL policies' language.  The district court, applying Florida law, found the policies' language unambiguous and determined the Chapter 558 process was not a "suit."  This appeal by ACI followed.

## III

We review a district court's grant or denial of a motion for summary judgment *de novo*, and apply the same legal standards that governed the district court.  *See Ave. CLO Fund, Ltd. v. Bank of Am., N.A.*, 723 F.3d 1287, 1293 (11th Cir. 2013).  Summary judgment is properly granted when the movant shows there

is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  *See id.* at 1293–94; FED. R. CIV. P. 56(a).

Contract interpretation and statutory construction present questions of law subject to plenary review.  *See Hegel v. First Liberty Ins. Corp.*, 778 F.3d 1214, 1219 (11th Cir. 2015).  Federal jurisdiction in this case is based on diversity, and the parties agree that Florida law controls.  *See State Farm Fire and Cas. Co. v. Steinberg*, 393 F.3d 1226, 1230 (11th Cir. 2004); *State Farm Mut. Auto. Ins. Co. v. Roach*, 945 So. 2d 1160, 1163 (Fla. 2006).

Under Florida law, we look at an insurance policy "as a whole and give every provision its full meaning and operative effect."  *Hyman v. Nationwide Mut. Fire Ins. Co.*, 304 F.3d 1179, 1186 (11th Cir. 2002).  "Florida courts start with 'the plain language of the policy, as bargained for by the parties.'"  *Steinberg*, 393 F.3d at 1230 (quoting *Auto-Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000)).  "Policy terms are given their plain and ordinary meaning and read in light of the skill and experience of ordinary people."  *Penzer v. Transp. Ins. Co.*, 545 F.3d 1303, 1306 (11th Cir. 2008).  If the relevant policy language is unambiguous, it governs.  *See Steinberg*, 393 F.3d at 1230.  If, however, the relevant policy language is susceptible to more than one reasonable interpretation—one providing coverage and the other limiting coverage—the insurance policy is considered

7

ambiguous and should be interpreted liberally in favor of the insured and strictly against the drafter of the policy. *See Anderson*, 756 So. 2d at 34.

### A

On appeal, C&F revives an argument it unsuccessfully raised before the district court—that § 558.004(13) forecloses imposing a mandatory defense obligation on insurers. Prior to the 2015 amendments, this subsection stated:

> This section does not relieve the person who is served a notice of claim under subsection (1) from complying with all contractual provisions of any liability insurance policy as a condition precedent to coverage for any claim under this section. *However, notwithstanding the foregoing or any contractual provision, the providing of a copy of such notice to the person's insurer, if applicable, shall not constitute a claim for insurance purposes*. Nothing in this section shall be construed to impair technical notice provisions or requirements of the liability policy or alter, amend, or change existing Florida law relating to rights between insureds and insurers except as otherwise specifically provided herein.

§ 558.004(13) (2012) (emphasis added). C&F, analogizing to Hawaii's notice and repair statute, relies on the italicized language to argue that "the legislature clearly prohibited treating a [Chapter] 558 notice as a 'claim for insurance purposes,' thus making it impossible for a [Chapter] 558 notice to create a duty to defend against a [Chapter] 558 notice." Br. for Appellee at 20. *See also* D.E. 37 at 12.

The district court rejected C&F's attempt to compare § 558.004(13) to Hawaii's notice and repair statute. Hawaii's statute provides:

> A claimant, no later than ninety days before filing an action against a contractor, shall serve the contractor with a written notice of claim.

8

> The notice of claim shall describe the claim in detail and include the results of any testing done. *The notice of claim shall not constitute a claim under any applicable insurance policy and shall not give rise to a duty of any insurer to provide a defense under any applicable insurance policy unless and until the process set forth in section 672E-5 is completed.* Nothing in this chapter shall in any way interfere with or alter the rights and obligations of the parties under any liability policy."

Haw. Rev. Stat § 672 E-3(a) (emphasis added).

The district court noted that, unlike the Hawaii statute, "the Florida statute does not say that the notice is not a claim. It says that the **provision** of the notice is not a claim. Nor does the Florida statute contain the specific language addressing the insurer's duty to defend contained in the Hawaii statute." D.E. 66 at 7. The district court concluded that the language of § 558.004(13) simply clarifies that nothing in the statute was intended to supplant the notice requirements under any applicable insurance policy. *See id.*

The district court believed its reading of the statutory provision was consistent with the (at the time, proposed) 2015 amendment, which added clarifying language to § 558.004(13). After the amendment, § 558.004(13) reads (emphasis ours): "However, notwithstanding the foregoing or any contractual provision, the providing of a copy of such notice to the person's insurer, if applicable, shall not constitute a claim for insurance purposes *unless the terms of the policy specify otherwise*." According to the district court, the 2015 amendment clarified the intent of the Florida Legislature that Chapter 558 was to have no

9

impact on the obligations of the insured to provide to the insurer whatever notice was required by the underlying insurance policy.

Although the nature of the Chapter 558 process is undoubtedly relevant in this appeal, the critical question before us—whether Chapter 558's notice and repair process constitutes a "suit" under the CGL policies—is, first and foremost, a question about what the language in the policies means. We agree with the district court that there is no statutory bar to defense and coverage of Chapter 558 proceedings, and therefore focus on the language in the insurance policies. That language ultimately determines whether C&F has a duty to defend.

**B**

ACI contends that the Chapter 558 process meets the CGL policies' definition of "suit" because it is a "civil proceeding." As ACI puts it, the Chapter 558 process is "undisputedly civil in nature." Br. for Appellant at 22. Furthermore, ACI argues, because the Chapter 558 process is a condition precedent to bringing a lawsuit and impacts any subsequent lawsuit, it is also a "proceeding," a term defined in legal dictionaries as "[a]n act or step that is part of a larger action" and "the steps taken or measures adopted in the prosecution or defense of an action," *id.* (quoting Black's Law Dictionary 1324 (9th ed. 2009)), or as "a particular step or series of steps in the enforcement, adjudication, or administration of rights, remedies, laws, or regulations," *id.* at 26 (quoting Merriam-Webster's

10

Dictionary of Law 387 (1996)).  ACI argues that these two dictionary definitions are persuasive because the Florida Supreme Court relied on them in *Raymond James Financial Services, Inc. v. Phillips*, 126 So. 3d 186, 191 (Fla. 2013), when it interpreted the word "proceeding" in a statute of limitations statute and concluded that "[w]hereas civil actions may be limited to court cases, a proceeding is clearly broader in scope."[2]

Alternatively, ACI argues that, even if the Chapter 558 process is not a "civil proceeding," it nonetheless constitutes an "alternative dispute resolution proceeding," and is therefore still a "suit" under the CGL policies.  *See* Br. for Appellant at 49.  In support of this argument, ACI notes that the Florida Legislature described the Chapter 558 process as an "alternative method to resolve construction disputes," and an "alternative dispute resolution mechanism."  *Id.* at 50 (quoting § 558.001).  Under this theory, ACI maintains, there is a question of fact as to whether or not C&F consented to ACI's participation in the Chapter 558 process.

For its part, C&F argues that the definition of "suit" in its policies requires a proceeding that determines the insured's legal liability to pay damages.  The Chapter 558 process, it says, "provides no mechanism to seek, and no adjudicatory procedure for, a determination of the insured's legal obligation to pay damages[.]"

---

[2] Neither the eighth edition of Black's Law Dictionary, published in 2004, nor the ninth edition of Black's Law Dictionary, published in 2009, contains a definition of "civil proceeding."

11

Br. for Appellee at 9. "Such a proceeding can only occur *after* the [Chapter] 558 notice and opportunity to repair process ends." *Id.* Therefore, C&F argues, it has no duty to defend ACI during the Chapter 558 process.

In addition, C&F contends that ACI's reliance on *Raymond James* is misplaced. In that case, C&F says, the Florida Supreme Court relied on a definition of "proceeding" in Black's Law Dictionary different than the one ACI proposes should be used. According to that definition, "proceeding" is "[a]ny procedural means for seeking redress from a tribunal or agency." *Raymond James*, 126 So. 3d at 190 (quoting Black's Law Dictionary 34 (9th ed. 2009)). Because a "tribunal" is "'[a] court or other adjudicatory body,'" *id.* at 191 (quoting Black's Law Dictionary 1646 (9th ed. 2009)), and an arbitrator fell under the definition of an adjudicator, the Florida Supreme Court held that "proceeding," as used in the statute, is "a broad term and includes arbitration." *Id.*

C&F has one more argument. Even assuming that the Chapter 558 process constitutes an "alternative dispute resolution proceeding in which such damages are claimed"—something C&F does not concede—C&F disputes the contention that ACI submitted to the Chapter 558 process with its consent.

## C

The district court ruled in favor of C&F, concluding that the Chapter 558 process did not constitute a "suit" and that, as a result, C&F had no obligation to

defend or indemnify ACI under the CGL policies.  The district court relied on the definition of "civil proceeding" from the 10th edition of Black's Law Dictionary— "[a] judicial hearing, session, or lawsuit in which the purpose is to decide or delineate private rights and remedies, as in a dispute between litigants in a matter relating to torts, contracts, property, or family law."  D.E. 66 at 11 (quoting Black's Law Dictionary 300 (10th ed. 2014)).  It explained that "[n]othing about the Chapter 558 process satisfies this definition."  *Id.*

The district court also examined the definition of "proceeding" in the eighth and ninth editions of Black's Law Dictionary, but disagreed with ACI that these definitions supported its position: "Far from an act or step that is part of a larger action, Chapter 558 is intended to avoid the commencement of an action."  *Id.* at 13.  In the view of the district court, "the thrust of the definitions in Black's [Law Dictionary is] that for something to be a 'civil proceeding', there must be some sort of forum and some sort of decision maker involved."  *Id.*  The district court found this conclusion to be consistent with the Florida Supreme Court's analysis in *Raymond James*.

Based on this definition, the district court determined that the Chapter 558 notice and repair process was aptly described by the Florida Legislature in § 558.001 as a "mechanism" and not a "proceeding."  This mechanism was meant to guide parties to enter into discussions about a possible resolution with one another,

13

but it did not constitute a "'proceeding' of any kind," *id.* at 15—including an alternative dispute resolution proceeding—because it did not provide for the parties to appear before anyone to assist with the process, or result in a decision or delineation of private rights and remedies.  Consequently, the district court held that the Chapter 558 process, which the condominium triggered with its notices to ACI, was not a "suit" under the CGL policies.

## IV

The district court concluded that the terms "suit," and more particularly, "civil proceeding," were not ambiguous, but we are not as sure.  The policies define "suit," in part, as a "civil proceeding."  They do not contain a corresponding definition for the term "civil proceeding," but do provide that "suit" includes an "arbitration proceeding" or "[a]ny other alternative dispute resolution proceeding" "in which such damages are claimed" and to which ACI submits with C&F's consent.  D.E. 36-1 at 23.

Although "the lack of a definition in a policy does not necessarily render [a] term ambiguous and in need of interpretation by the courts," we have "held that differing interpretations of the same provision is evidence of ambiguity[.]"  *Hegel*, 778 F.3d at 1220 (internal quotation marks and citations omitted).  Here, there are reasonable arguments presented by both sides as to whether the Chapter 558 process constitutes a "suit" or "civil proceeding" within the meaning of the CGL

14

policies issued by C&F.  The Florida Supreme Court has provided some guidance regarding the meaning of "proceeding" in *Raymond James*.  That case, however, involved the interpretation of a statute and not the interpretation of an insurance policy, which "must be read in light of the skill and experience of ordinary people, and be given their everyday meaning as understood by the man on the street." *Ergas v. Universal Prop. and Cas. Ins. Co.*, 114 So. 3d 286, 288 (Fla. 4th DCA 2013) (internal quotation marks and citation omitted).

As the parties and district court noted, there are several decisions from courts outside of Florida that address an insurer's duty to defend an insured pursuant to certain CGL policies during a statutory notice and repair process.  *See Clarendon Am. Ins. Co. v. Starnet Ins. Co.*, 113 Cal. Rptr. 3d 585, 592, 593 (Cal. Ct. App. 2010) (holding that the "Calderon Process" in California was a "civil proceeding" within the meaning of a CGL policy because it "is more than a prelitigation alternative dispute resolution requirement," as "[i]t is part and parcel of construction or design defect litigation" and "cannot be divorced from a subsequent complaint"), *review granted*, 117 Cal. Rptr. 3d 613 (Cal. 2010), *review dismissed*, 121 Cal. Rptr. 3d 879 (Cal. 2011); *Melssen v. Auto-Owners Ins. Co.*, 285 P.3d 328, 334–35 (Colo. App. 2012) (holding that the Colorado Defect Action Reform Act process constituted an alternative dispute resolution proceeding, and thus was a "suit" within the definition of a CGL policy); *Cincinnati Ins. Co. v.*

15

*AMSCO Windows*, 593 F. App'x 802, 809 (10th Cir. 2014) (holding that Nevada's "Chapter 40" prelitigation process was not a "civil proceeding" within the meaning of a CGL policy because "while Chapter 40 purports to mandate participation by contractors, subcontractors, and suppliers, noncompliance does not result in any adverse judgment or obligation but rather imposes limited consequences in subsequent litigation"). Although these cases involve similar policy language, each of these decisions pertains to a unique state notice and repair statute that is different from Florida's Chapter 558.

"On many occasions this court has resolved difficult or uncertain questions of state law without recourse to certification." *Escareno v. Noltina Crucible and Refractory Corp.*, 139 F.3d 1456, 1461 (11th Cir. 1998). But here we are confronted with a question intersecting state insurance law and a state statute for which there is no guidance from the Florida courts. And, as we explain, the outcome of this case may have significant practical and policy implications for Florida.

ACI argues that, without the benefit of insurance carriers' participation and defense during the Chapter 558 process, many in the construction industry will decline to meaningfully participate in the process and may even invite litigation to obtain the carriers' contribution, thus undermining the Florida Legislature's intent. *See* Br. for Appellant at 55. This view is shared by its *amici curiae*, the

16

Construction Association of South Florida, the South Florida Associated General Contractors, and the Leading Builders of America. They argue that if the term "suit," as used in C&F's CGL policies, does not include the process set forth in Chapter 558, then policyholders "will contest or not respond to [Chapter] 558 notices so that the claimant files a lawsuit—triggering the duty to defend." Amended Br. of Construction Ass'n of South Florida *et al*. at 10–11.

C&F, on the other hand, maintains that imposing a duty on insurers to defend during the Chapter 558 process will fuel an insurance crisis in the state by dramatically increasing the cost of insurance to those in the construction trade and limiting its availability. *See* Br. for Appellee at 26–27. The American Insurance Association and the Florida Insurance Council, in their *amici curiae* brief in support of C&F, argue that it is not necessarily in an insured's interest for a Chapter 558 notice to trigger a defense obligation. They say that if the insurer must appoint counsel to represent the insured at the Chapter 558 stage, the claimant's likely response will also be to retain a lawyer, and then "[o]nce the claimant retains counsel, its legal fees . . . make it harder for the claimant to be made whole and, therefore, for the case to settle," thereby also frustrating the Florida Legislature's intent. Br. of American Ins. Ass'n *et al*. at 18.

Given these possible policy implications with respect to this question of first impression, we think certification to the Florida Supreme Court is appropriate.

**V**

We respectfully certify the following question of law to the Florida Supreme Court:

> Is the notice and repair process set forth in Chapter 558 of the Florida Statutes a "suit" within the meaning of the CGL policies issued by C&F to ACI?

Our phrasing of this question is not intended to restrict, in any way, the Florida Supreme Court's consideration or resolution of the issue. To assist the Florida Supreme Court in considering this certified question, the record in this case, copies of the parties' briefs, and copies of the briefs of the *amici curiae* shall accompany this certification.

**QUESTION CERTIFIED.**