# Supreme Court of Florida

_____

No. SC16-1420
_____

**ALTMAN CONTRACTORS, INC.,**
Appellant,

vs.

**CRUM & FORSTER SPECIALTY INSURANCE COMPANY,**
Appellee.

[December 14, 2017]

POLSTON, J.

Altman Contractors, Inc., the general contractor for the construction of a condominium, was insured by Crum & Forster Specialty Insurance Company ("C&F") on a general liability policy. C&F had a duty to defend Altman in any "suit," as defined by the policy, arising from the project.

Altman claims that this duty to defend was invoked when the property owner served it with several notices under chapter 558, Florida Statutes, a statutory process for resolving construction defect claims that is a condition precedent to filing a lawsuit. There are no issues presented to us that would bring into question

whether there is underlying coverage under the policy for at least some of the claims.

We review the following question of law certified by the United States Court of Appeals for the Eleventh Circuit (rephrased only to match references within this opinion):

> Is the notice and repair process set forth in chapter 558, Florida Statutes, a "suit" within the meaning of the commercial general liability policy issued by C&F to Altman?

Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co., 832 F.3d 1318, 1326 (11th Cir. 2016).[1] We answer this question in the affirmative because the chapter 558 presuit process is an "alternative dispute resolution proceeding" as included in the policy's definition of "suit." However, we do not address whether, in this case, C&F consented to Altman's participation in the chapter 558 process, thereby giving rise to its duty to defend, because it is outside the scope of the certified question and an issue of fact disputed by the parties.

**BACKGROUND**

Altman was the general contractor for the construction of a high-rise residential condominium in Broward County, Florida, Sapphire Condominium ("Sapphire"). Altman was insured by C&F for the Sapphire project through seven

---

1. We have jurisdiction. See art. V, § 3(b)(6), Fla. Const.

consecutive one-year commercial general liability (CGL) insurance policies, all of which were materially the same ("the policy"). These policies were in effect from February 1, 2005, through February 1, 2012.

The policy provided in pertinent part:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and <u>duty to defend</u> the insured against any "<u>suit</u>" seeking those damages. However, we will have no duty to defend the insured against any "<u>suit</u>" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(Emphasis added.) The policy defined the term "suit" as follows:

> "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
>       a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
>       b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

The policy did not provide further definitions for "civil proceeding" or "alternative dispute resolution proceeding" as used within this definition of "suit."

Between April 2012 and November 2012, Sapphire served Altman with several chapter 558 notices of claim, which cumulatively claimed over 800 construction defects in the Sapphire project. On or about January 14, 2013,

Altman notified C&F of Sapphire's claims and demanded, pursuant to the policy, that C&F defend and indemnify Altman as to Sapphire's claims. C&F denied that Sapphire's notices of claim invoked its duty to defend because the notices did not constitute a "suit." When C&F refused to defend Altman, it retained counsel to defend the notices of claim.

On May 28, 2013, Sapphire served Altman with a supplement to the November 2012 notice, claiming thirteen additional deficiencies in the Sapphire project. Sapphire demanded that Altman "take all measures necessary to correct the identified construction and/or design defects."

On August 5, 2013, C&F, maintaining its position that Sapphire's notices of claim did not invoke its duty to defend Altman under the policy, hired counsel to defend the claims. According to C&F, it retained counsel for Altman under a reservation of rights in anticipation of possible litigation. Altman objected to C&F's selection of counsel, demanded that its original counsel be paid to continue defending, and requested reimbursement from C&F for the fees and expenses incurred since notifying C&F of Sapphire's notices of claim. C&F denied Altman's requests. Ultimately, Altman settled all of Sapphire's claimed construction defects without any lawsuit being filed and without C&F's involvement.

- 4 -

Altman filed a declaratory judgment action in the United States District Court for the Southern District of Florida seeking a declaration that C&F owed a duty to defend and to indemnify it under the policy. Altman moved for partial summary judgment "solely on the issue of whether [C&F's] duty to defend its insured, [Altman], was triggered when [Altman] demanded a defense to the" notices of claim. Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co., 124 F. Supp. 3d 1272, 1275 (S.D. Fla. 2015). C&F also moved for summary judgment. Id.

The federal district court concluded that nothing in chapter 558 precludes coverage during the chapter 558 presuit process "if the policy otherwise would provide for coverage." Id. at 1278. Looking to the terms of the policy, the federal district court found "no ambiguity in the policy provisions at issue" and concluded that "[n]othing about the Chapter 558 process satisfies th[e] definition" of "civil proceeding." Id. at 1279. Thus, the federal district court denied Altman's motion for partial summary judgment and granted summary judgment for C&F. Id. at 1282-83.

Altman appealed to the United States Circuit Court of Appeals for the Eleventh Circuit, and the Eleventh Circuit certified the legal issue before us. 832 F.3d at 1326.

**ANALYSIS**

Whether C&F has a duty to defend Altman during the chapter 558 process is determined by whether the process is a "suit" as defined by the policy. "[I]nsurance policy interpretation . . . is a question of law, subject to de novo review." Penzer v. Transp. Ins. Co., 29 So. 3d 1000, 1005 (Fla. 2010). We construe insurance contracts according to their plain language. Fayad v. Clarendon Nat'l Ins. Co., 899 So. 2d 1082, 1086 (Fla. 2005). And the parties do not dispute that Florida law controls.

## A. Chapter 558 Process

Chapter 558, titled "Construction Defects," sets forth procedural requirements before a claimant may file an action for a construction defect. See § 558.003, Fla. Stat. (2012). Specifically, a claimant must "serve written notice of claim on the contractor, subcontractor, supplier, or design professional, as applicable" before the claimant may file an action for a construction defect. § 558.004(1), Fla. Stat. (2012).

When Altman received Sapphire's first notice of claim, section 558.001, Florida Statutes (2012), provided the following legislative findings and declaration:

> The Legislature finds that it is beneficial to have <u>an alternative method to resolve construction disputes that would reduce the need for litigation as well as protect the rights of property owners</u>. An effective <u>alternative dispute resolution mechanism</u> in certain construction defect matters should involve the claimant filing a notice of claim with the contractor, subcontractor, supplier, or design

professional that the claimant asserts is responsible for the defect, and <u>should provide the contractor, subcontractor, supplier, or design professional with an opportunity to resolve the claim without resort to further legal process</u>.

(Emphasis added.)[2]

Upon receipt of a chapter 558 notice of claim, the recipient "must serve a written response to the claimant" within the statutorily specified time-period, providing either an offer "to remedy the alleged construction defect at no cost to the claimant," "to compromise and settle the claim by monetary payment," "to compromise and settle the claim by a combination of repairs and monetary payment," a statement disputing the claim, or a statement that any monetary payment will be determined by the recipient's insurer. § 558.004(5), Fla. Stat.

---

2. In 2015, the Legislature amended section 558.001 as follows (additions underlined):

> The Legislature finds that it is beneficial to have an alternative method to resolve construction disputes that would reduce the need for litigation as well as protect the rights of property owners. An effective alternative dispute resolution mechanism in certain construction defect matters should involve the claimant filing a notice of claim with the contractor, subcontractor, supplier, or design professional that the claimant asserts is responsible for the defect, and should provide the contractor, subcontractor, supplier, or design professional, <u>and the insurer of the contractor, subcontractor, supplier, or design professional</u>, with an opportunity to resolve the claim <u>through confidential settlement negotiations</u> without resort to further legal process.

Ch. 2015-165, § 1, Laws of Fla.

(2012). Once the claimant "receives a timely settlement offer," the claimant "must accept or reject the offer" in writing. § 558.004(7), Fla. Stat. (2012).

"[T]he claimant may, without further notice, proceed with an action" against the recipient if the parties either agree to "a partial settlement or compromise of the claim,"[3] the recipient "disputes the claim and will neither remedy the defect nor compromise and settle the claim," or the claimant does not receive a response "within the time provided." § 558.004(6), Fla. Stat. (2012). If the offeror satisfies the parties' agreement within a reasonable period of time, "the claimant is barred from proceeding with an action for the claim described in the notice of claim or as otherwise provided in the accepted settlement offer." § 558.004(8), Fla. Stat. (2012). "[A]ny offer or failure to offer . . . to remedy an alleged construction defect or to compromise and settle the claim by monetary payment does not constitute an admission of liability with respect to the defect and is not admissible" in a subsequent lawsuit. § 558.004(9), Fla. Stat. (2012). "If a claimant initiates an action without first accepting or rejecting the offer, the court shall stay the action upon timely motion until the claimant complies with this subsection." § 558.004(7), Fla. Stat. (2012). "In the event of . . . litigation," the trial court may

---

3. In such case, the action may proceed only "on the unresolved portions of the claim." § 558.004(6), Fla. Stat. (2012).

- 8 -

order sanctions for failing to provide requested discovery during the chapter 558 process.   § 558.004(15), Fla. Stat. (2012).

## B. "Suit" within the Policy's Definition

As stated above, the policy defines "suit" as follows:

> "Suit" means a civil proceeding in which damages because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies are alleged.  "Suit" includes:
>     a.  An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or
>     b.  Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

Initially, the policy defines "suit" as "a <u>civil proceeding</u> in which damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies are alleged."  (Emphasis added.)  Therefore, to qualify as a "suit" within this initial portion of the definition, the chapter 558 process must constitute a "civil proceeding."

In <u>Raymond James Financial Services, Inc. v. Phillips</u>, 126 So. 3d 186, 190 (Fla. 2013) (quoting <u>Black's Law Dictionary</u> 1324 (9th ed. 2009)), this Court employed a definition of "proceeding" as "[a]ny procedural means for seeking redress from a tribunal or agency."  The Court also noted that a "proceeding" is "a particular step or series of steps in the enforcement, adjudication, or administration of rights, remedies, laws, or regulations."  <u>Id.</u> n.4 (quoting <u>Merriam-Webster's</u>

Dictionary of Law 387 (1996)). The term "civil proceeding" was added in the Tenth Edition of Black's Law Dictionary and is defined as "[a] judicial hearing, session, or lawsuit in which the purpose is to decide or delineate private rights and remedies, as in a dispute between litigants in a matter relating to torts, contracts, property, or family law." Black's Law Dictionary, 300 (10th ed. 2014).

In light of these definitions, the chapter 558 notice and repair process cannot be considered a civil proceeding under the policy terms because the recipient's participation in the chapter 558 settlement process is not mandatory or adjudicative. See § 558.004(5)-(6), Fla. Stat. (2012). Upon receipt of the required notice of claim, the recipient may choose to not respond and, thereby, force the claimant to file a lawsuit to recover for the identified construction defect. Id.

In other words, chapter 558 does not place any obligation on the insured to participate in the chapter 558 process. The chapter 558 framework has never been anything other than a voluntary dispute resolution mechanism on the part of the insured, despite its requirement that the claimant serve the insured with a notice before initiating a lawsuit. Further, the chapter 558 process does not take place in a court of law or employ any type of adjudicatory body. Nor does the chapter 558 process produce legally binding results. Rather, chapter 558 sets forth a presuit process whereby the claim may be resolved solely by the parties through a negotiated settlement or voluntary repairs without ever filing a lawsuit. Therefore,

the chapter 558 process is not a "civil proceeding" within the policy definition of "suit."

However, in subparagraph (b),[4] the policy broadens the definition of "suit" to "include[]," "[a]ny other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent." Looking to the plain meaning of the policy's terms, "alternative dispute resolution" means "[a] procedure for settling a dispute by means other than litigation." Black's Law Dictionary 91 (9th ed. 2009).

Chapter 558 falls within this definition as a statutorily required presuit process aimed to encourage the claimant and insured to settle claims for construction defects without resorting to litigation. See §§ 558.001, 558.004. Indeed, the Legislature explicitly described chapter 558 as "[a]n effective alternative dispute resolution mechanism," intended to be beneficial for reducing construction defect litigation. § 558.001 (emphasis added); see also Specialty Eng'g Consultants, Inc. v. Hovstone Props. Fla., LLC, 968 So. 2d 680, 681 (Fla. 4th DCA 2007) (recognizing that "the Florida Legislature created an alternative method to resolve construction disputes involving multiple parcels" (emphasis added)). Therefore, we conclude that the chapter 558 process is an "alternative

---

4. We do not address the policy's definition of "suit" under subparagraph (a) because the chapter 558 process is clearly not an "arbitration proceeding."

dispute resolution proceeding" within the plain meaning of this policy term, the same as mediation would be.[5]

The next part of the policy's definition of "suit" under subparagraph (b) requires that "such damages" be claimed in the "alternative dispute resolution proceeding." Chapter 558 explicitly provides for claimants seeking damages. In fact, section 558.002(3) defines a "claimant" as one asserting a "claim for damages." Likewise, the notice of claim "must describe the claim in reasonable detail sufficient to determine the general nature of each alleged construction defect and a description of the damage or loss resulting from the defect." § 558.004(1). Further, section 558.004(5) includes "monetary payment" as a potential resolution of a chapter 558 claim. Thus, chapter 558 provides for damages, as required by the policy's definition of "suit" under subparagraph (b).

Finally, the policy's definition of "suit" under subparagraph (b) requires C&F's consent to Altman's submission to the "alternative dispute resolution proceeding" in order to invoke C&F's duty to defend Altman under the policy. However, we do not address whether, in this case, C&F consented to Altman's

---

5. Mediation is an alternative dispute resolution proceeding that is not adjudicative, and could contractually be made a condition precedent to bringing suit, but is not a civil proceeding as contemplated by the policy.

participation in the chapter 558 process because it is outside the scope of the certified question and an issue of fact disputed by the parties.

## CONCLUSION

Therefore, we answer the certified question in the affirmative and hold that the notice and repair process set forth in chapter 558 constitutes a "suit" within the meaning of the commercial general liability policy issued by C&F to Altman. Although the chapter 558 process does not constitute a "civil proceeding," it is included in the policy's definition of "suit" as an "alternative dispute resolution proceeding" to which the insurer's consent is required to invoke the insurer's duty to defend the insured. Accordingly, we remand this case to the United States Court of Appeals for the Eleventh Circuit for further proceedings.

It is so ordered.

LABARGA, C.J., and LEWIS, QUINCE, and CANADY, JJ., concur.
LEWIS, J., concurs with an opinion.
PARIENTE, J., concurs in part and dissents in part with an opinion.
LAWSON, J., concurs in part and dissents in part with an opinion.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

LEWIS, J., concurring.

Although I agree fully with the result reached by the majority today, I write separately to emphasize that there are multiple steps in the final analysis that must be crossed to find the proper conclusion under Florida law. Namely, without first

- 13 -

determining <u>if</u> coverage exists at all, it is difficult to simply proceed to answer the

question of <u>whether</u> that coverage applies to the alleged defects at issue in this case

in the chapter 558, Florida Statutes, notice of claim process.

This Court has, in the past, explained that commercial general liability

(CGL) policies typically do not cover workmanship defects:

> The majority view holds that the purpose of this comprehensive
> liability insurance coverage is to provide protection for personal
> injury or for property damage caused by the completed product, but
> not for the replacement and repair of that product.
> To interpret the policy as providing coverage for construction
> deficiencies, as asserted by the petitioners and a minority of states,
> would enable a contractor to receive initial payment for the work from
> the homeowner, then receive subsequent payment from his insurance
> company to repair and correct deficiencies in his own work. . . .  We
> agree with the explanation of this type of coverage as stated by the
> Supreme Court of New Jersey in <u>Weedo v. Stone-E-Brick, Inc.</u>, 81
> N.J. 233, 405 A.2d 788 (1979), in which it said:
>
>> An illustration of this fundamental point may serve to
>> mark the boundaries between "business risks" and
>> occurrences giving rise to insurable liability.  When a
>> craftsman applies stucco to an exterior wall of a home in
>> a faulty manner and discoloration, peeling and chipping
>> result, the poorly-performed work will perforce have to
>> be replaced or repaired by the tradesman or by a surety.
>> On the other hand, should the stucco peel and fall from
>> the wall, and thereby cause injury to the homeowner or
>> his neighbor standing below or to a passing automobile,
>> an occurrence of harm arises which is the proper subject
>> of risk-sharing as provided by the type of policy before
>> us in this case.

<u>LaMarche v. Shelby Mut. Ins. Co.</u>, 390 So. 2d 325, 326-27 (Fla. 1980) (quoting

<u>Weedo</u>, 405 A.2d at 791-92).

Chapter 558, Florida Statutes, concerns actions arising as a result of construction defects. § 558.001, Fla. Stat. (2016). Specifically, the term "construction defect" is defined as follows:

(5) "Construction defect" means a deficiency in, or a deficiency arising out of, the design, specifications, surveying, planning, supervision, observation of construction, or construction, repair, alteration, or remodeling of real property resulting from:
(a) Defective material, products, or components used in the construction or remodeling;
(b) A violation of the applicable codes in effect at the time of construction or remodeling which gives rise to a cause of action pursuant to s. 553.84;
(c) A failure of the design of real property to meet the applicable professional standards of care at the time of governmental approval; or
(d) A failure to construct or remodel real property in accordance with accepted trade standards for good and workmanlike construction at the time of construction.

§ 558.002(5), Fla. Stat. Furthermore, " 'Action' means any civil action or arbitration proceeding for damages . . . caused by an alleged construction defect, but does not include any administrative action or any civil action or arbitration proceeding asserting a claim for alleged personal injuries arising out of an alleged construction defect." § 558.002(1) (emphasis added). Based on its application only to construction defects and the explicit limitation included in the definition of an "action," it is not clear that chapter 558, Florida Statutes, applies to the CGL policy at issue in this case at all.

- 15 -

Thus, the initial question that must be answered is whether the CGL policy covers the chapter 558, Florida Statutes, notices of claims at issue here, which appears to be a dispute involved in the federal litigation. Additionally, it is important to determine the scope of an insurance company's duty to defend under Florida law when there may be claims that are both within and beyond the coverage of the CGL policy.

These questions are not before us today and thus are not considered in the majority's analysis, based on the limited certified question presented here. Instead, the United States Court of Appeals for the Eleventh Circuit has asked only for a very limited opinion on a limited specific legal issue in an otherwise highly factual case. The factual issues described above are beyond the question before this Court today and should instead be resolved in federal court based on Florida law. Therefore, in this sterile environment before us today, I concur with the majority's conclusion.

PARIENTE, J., concurring in part and dissenting in part.

I agree that the chapter 558 process can be considered an "alternative dispute resolution proceeding." However, I dissent from the majority's narrow construction of the commercial general liability policy so as to relieve the insurer of its duty to defend the insured in the chapter 558 process absent the insurer's consent to the insured's participation in the mandatory presuit process. To the

extent there is any ambiguity in the policy's definition of "suit," I would construe the policy language broadly in favor of coverage, as our precedent directs. See, e.g., State Farm Mut. Auto. Ins. Co. v. Menendez, 70 So. 3d 566, 570 (Fla. 2011); Travelers Indem. Co. v. PCR Inc., 889 So. 2d 779, 785-86 (Fla. 2004); State Farm Fire & Cas. Co. v. CTC Dev. Corp., 720 So. 2d 1072, 1076 (Fla. 1998).

The majority reaches its conclusion that the chapter 558 process is not a "civil proceeding" within the policy's definition of "suit" by discounting the purpose and procedures of chapter 558, Florida Statutes, as set forth by the Legislature. Every aspect of the chapter 558 process envisions active participation by the contractor and, therefore, its insurer if the terms of the applicable policy provide coverage. See § 558.004(13), Fla. Stat. (2012). For example, section 558.001, Florida Statutes (2012), states the Legislature's finding "that it is beneficial to have an alternative method to resolve construction disputes that would reduce the need for litigation as well as protect the rights of property owners," and this method "should provide the contractor, subcontractor, supplier, or design professional with an opportunity to resolve the claim without resort to further legal process." Id. § 558.001.

Chapter 558 unquestionably creates a mandatory presuit procedure for construction defect claims by requiring the claimant to serve the insured with a notice of claim before filing a construction defect lawsuit. See id. § 558.004(1);

- 17 -

majority op. at 10.  As the majority recognizes and the United States Court of Appeals for the Eleventh Circuit emphasized, chapter 558 limits any construction defect lawsuit to defects that have been properly identified in a chapter 558 notice of claim.  See § 558.003, Fla. Stat. (2012); Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co., 832 F.3d 1318, 1320 (11th Cir. 2016); majority op. at 8.  Also, chapter 558 requires the insured to respond to the claimant, stating that "the person who was served the notice . . . must serve a written response to the claimant."  § 558.004(5), Fla. Stat. (2012) (emphasis added).  Further, as the amici—National Association of Home Builders, together with several other associations of contractors and homebuilders[6]—explain and the majority recognizes, section 558.004(15) provides that, in the event of litigation following the chapter 558 process, the trial court may order sanctions for a party's failure to provide discovery requested during the chapter 558 process.  Br. of Amici Curiae Builders at 10; majority op. at 8-9.  Thus, the presuit process delineated by chapter 558 is a mandatory prerequisite to construction defect litigation.

---

6. The associations that joined the National Association of Home Builders as Amici Curiae are the Construction Association of South Florida, South Florida Associated General Contractors, Leading Builders of America, and the Florida Homebuilders Association.  For ease of reference, they are referred to as "Amici Curiae Builders."

Precedent also directs that we interpret broadly the term "civil proceeding," as used in the policy's definition of "suit."  In <u>Raymond James Financial Services, Inc. v. Phillips</u>, 126 So. 3d 186 (Fla. 2013), this Court stated, "Whereas civil actions may be limited to court cases, a proceeding is clearly broader in scope." <u>Id.</u> at 191.  Under the definition of "civil proceeding" that this Court noted in <u>Raymond James</u> and the majority dismisses, the chapter 558 process is the first of a "series of steps in the enforcement, adjudication, or administration of rights, remedies, laws, or regulations."  <u>Id.</u> at 190 n.4 (quoting <u>Merriam-Webster's Dictionary of Law</u> 387 (1996)); <u>see</u> majority op. at 9-10.  Therefore, the chapter 558 process is a "civil proceeding" within the policy's definition of "suit."

The majority also erroneously relies, at least in part, on the definition of "civil proceeding" from the Tenth Edition of <u>Black's Law Dictionary</u>, which suggests an adjudication requirement.  Majority op. at 10.  The federal district court also found this definition controlling.  <u>See</u> <u>Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.</u>, 124 F. Supp. 3d 1272, 1279 (S.D. Fla. 2015). However, this definition did not exist when the policy language, which is controlling in this case, was written or when the claims in this case arose. Therefore, the definition of "civil proceeding" from the Tenth Edition of <u>Black's Law Dictionary</u> is not controlling or indicative of the "plain language of the polic[y] as bargained for by the parties."  <u>Auto-Owners Ins. Co. v. Anderson</u>, 756

- 19 -

So. 2d 29, 34 (Fla. 2000). Rather, at the time the policy was written and bargained for by the parties, Black's Law Dictionary had no definition for the term "civil proceeding."

Further, the policy does not define "civil proceeding" as an independent term, although certainly the insurer, as the drafter of the policy, could have further defined the policy terms to be more specific and provide more clarity. Instead, the policy's definition of "suit" broadly "includes" other forms of proceedings. The term "include indicates that what is to follow is only part of a greater whole." Childers v. State, 936 So. 2d 585, 597 (Fla. 1st DCA 2006); see Alligator Enters., Inc. v. Gen. Agent's Inc. Co., 773 So. 2d 94, 95 (Fla. 5th DCA 2000). Thus, the term "includes," as used in the policy's definition of "suit," broadens the scope of the insurer's duty to defend.

While I agree with the majority that the chapter 558 process can certainly be considered an "alternative dispute resolution proceeding" under subparagraph (b) of the policy's definition of "suit," this alternative provision does not provide any certain benefit to the insured. Subparagraph (b) requires the insurer to consent to the insured participating in the proceeding for the duty to defend to arise. Therefore, subparagraph (b) leaves the insured at the mercy of the insurer, who has complete power to decide if and when to participate in the mandatory chapter 558 process. So, if the insurer refuses to participate and defend the insured after

- 20 -

receiving a chapter 558 notice of claim, the insured is left on its own to either defend itself or settle the claim, with any payments not covered by the policy.

As a result of the majority's holding, as Amici Curiae Builders argue, an insured has an incentive to not participate in the chapter 558 process and instead opt out of the chapter 558 process in favor of subjecting itself to a lawsuit, which would undoubtedly constitute a "suit" that invokes the insurer's duty to defend. Br. of Amici Curiae Builders at 8. Creating such disincentives undermines the Legislature's intent in enacting chapter 558 to "reduce the need for litigation." § 558.001, Fla. Stat. (2012); accord Br. of Amici Curiae Builders at 7-8.

The unfortunate result of an insurer not having a duty to defend the insured in the chapter 558 process is demonstrated by the convoluted facts in this case. The insurer, Crum & Forster Specialty Insurance Company ("C&F"), after receiving notice of several chapter 558 notices of claim and initially refusing to defend the insured, Altman Contractors, Inc. ("ACI"), belatedly agreed to take part in defending the claim, despite maintaining that Sapphire's notices of claim did not invoke its duty to defend ACI under the policy. Majority op. at 4.

To be clear, C&F did not refuse to defend ACI because part of Sapphire's claim involved defects that required repair. In fact, C&F concedes that some of the defects noticed by Sapphire were within the policy's coverage. Nor did C&F refuse to defend ACI based on lack of proper notice of Sapphire's claims, despite

- 21 -

the policy's requirement that ACI make C&F "immediately" aware of any claims that may fall under the policy.  In fact, if ACI had not given C&F notice of the claim, C&F may have had a legitimate basis for denying the claim based on prejudice.

Considering the terms within the policy's definition of "suit," coupled with Florida law requiring that ambiguous policy language be construed broadly in favor of providing coverage to the insured, I would answer the certified question in the affirmative, holding that the chapter 558 process is a "civil proceeding" within the policy's definition of "suit."

LAWSON, J., concurring in part and dissenting in part.

I fully agree with the majority that the chapter 558 presuit process for resolving disputes over "construction defects" is not a "civil proceeding" within the meaning of this commercial general lines ("CGL") policy, but disagree with the majority's conclusion that the chapter 558 process fits the "alternative dispute resolution proceeding" portion of the policy definition of "suit," primarily for reasons suggested by Justice Lewis's concurring opinion.

It is axiomatic that when construing a contract, the "entire contract should be considered and provisions should not be considered in isolation," Burlington & Rockenbach, P.A. v. Law Offices of E. Clay Parker, 160 So. 3d 955, 958 (Fla. 5th DCA 2015), so that the court can "reach a contract interpretation consistent with

- 22 -

reason, probability, and the practical aspect of the transaction between the parties," id. (quoting Whitley v. Royal Trails Prop. Owners' Ass'n, Inc., 910 So. 2d 381, 383 (Fla. 5th DCA 2005)). As Justice Lewis explains in his concurring opinion, the CGL policy in this case covers personal injury and property damage claims, but not construction defect claims. Put simply, a CGL carrier does not insure the contractor's performance or the quality of the contractor's work. Consistent with the coverage extended in the contract, the parties agreed that the insurer would defend only covered "suits," which the contract expressly defines as those "civil proceeding[s]," "arbitration proceeding[s]," and "other alternative dispute resolution proceeding[s]" seeking "damages because of 'bodily injury,' 'property damage' or 'personal and advertising injury' to which this insurance applies." The policy even reiterates that the insurer has "no duty to defend the insured against any 'suit' seeking damages . . . to which this insurance does not apply."

Although chapter 558 created a type of alternative dispute resolution process, it is a process for resolving construction defect claims "to which this [CGL] insurance [policy] does not apply." As such, the process is not a "suit" as defined by the terms of the policy.

The majority's contrary analysis on this issue focuses almost exclusively on the obvious, that chapter 558 creates an alternative dispute process, and concludes that the insurer had a duty to defend because the potential plaintiff sought

"damages," while appearing to overlook that the policy obligates the insurer to extend a defense only in alternative dispute resolution proceedings seeking <u>covered</u> damages. As a result, the majority misreads chapter 558 to force-place coverage that does not exist under the policy.

Of course, a property owner could always mix a covered claim in with its noncovered construction defect claims for which the statute requires notice. Here, for example, Altman claimed that sixteen of the roughly 800 identified defects caused some "property damage to the building." But, even with that possibility, it would be inconsistent with "reason, probability, and the practical aspect of the transaction" to conclude that this policy language was intended by the parties to put the insurer on the hook for all legal costs incurred as a result of its insured's participation in a statutory presuit mechanism for resolving construction defect claims not covered by its policy. Although that observation should end the inquiry, analyzing the precise policy language and the chapter 558 process yields three additional reasons why this court should conclude that the chapter 558 process is not an "alternative dispute resolution <u>proceeding</u>" for claiming covered "<u>damages</u>" within the meaning of this policy.

First, the chapter 558 process is not even a "proceeding" as that word is commonly understood. There is no third-party mediator or other official facilitating the process. The parties do not gather for mandatory negotiation.

- 24 -

There is simply a notice given of construction defects, cooperation required in the exchange of information necessary to respond to the notice, and a response from the contractor as to whether the contractor will make repairs, offer to settle, or deny responsibility.

Second, the chapter 558 process does not even contain a mechanism for determining "damages," even for noncovered construction defects. Rather, the process is aimed at giving the contractor an opportunity to "repair" its work prior to being sued for damages (which, for a construction defect claim, would generally be the cost to the owner of repairing the defective work itself, using another contractor).

Finally, the statute makes clear that even if a chapter 558 notice includes a defect alleged to have caused damage covered by insurance, insurer participation is not intended. First, the statute provides that the chapter 558 notice "shall not constitute a claim for insurance purposes." § 558.004(13), Fla. Stat. (2012). Then, the statute provides that if the contractor responds to the notice with an offer to settle, the offer "will not obligate the [contractor's] insurer[.]" § 558.004(5)(b) - (c), Fla. Stat. (2012). Finally, if the contractor believes that the chapter 558 notice includes a defect that has caused damage covered by insurance, it is directed to respond to the claimant by giving notice that with respect to that part of the claim any "monetary payment, including insurance proceeds . . . will be determined by

- 25 -

the [contractor's] insurer within 30 days after notification to the insurer by means of serving the claim, <u>which service shall occur at the same time the claimant is notified of this settlement option</u>." § 558.004(5)(e), Fla. Stat. (2012) (emphasis added). In other words, the statute not only prohibits the claimant's chapter 558 notice from acting as an insurance claim, but expressly directs the contractor to respond to the notice without involving its insurer and to send notice of any covered claim only after it has analyzed the notice, exchanged information, and fashioned its response—at the end of the chapter 558 process. To me, this reflects the Legislature's understanding that the singular type of claim for which it was establishing this process—a construction defect claim—does not generally involve insurance. And, in light of this understanding, the Legislature very carefully drafted the statute so as to exclude from the chapter 558 process secondary claims for personal injury or property damage caused by a construction defect (to which insurance would typically apply). Therefore, the majority construes the statute as applying to a type of claim that the plain language of the statute excludes from the chapter 558 process.

For these reasons, I conclude that the notice and repair process set forth in chapter 558, Florida Statutes, is not a "suit" within the meaning of this CGL policy, and would answer "no" to the certified question.

Certified Question of Law from the United States Court of Appeals for the Eleventh Circuit – Case No. 15-12816

Adam P. Handfinger and Meredith N. Reynolds of Peckar & Abramson, P.C., Miami, Florida,

     for Appellant

Kimberly A. Ashby of Foley & Lardner, LLP, Orlando, Florida; and Holly S. Harvey of Clyde & Co., Miami, Florida,

     for Appellee

Gregory D. Podolak of Saxe Doernberger & Vita, P.C., Naples, Florida, and Brian J. Clifford of Saxe Doernberger & Vita, P.C., Trumbull, Connecticut,

     Amicus Curiae United Policyholders

Mark A. Boyle, Molly Chafe Brockmeyer, and Alexander A. Brockmeyer of Boyle & Leonard, P.A., Fort Myers, Florida; Christine A. Gudaitis and Ashley B. Jordan of Ver Ploeg & Lumpkin, P.A., Miami, Florida,

     Amici Curiae Construction Association of South Florida, South Florida Associated General Contractors, Leading Builders of America, Florida Homebuilders Association, and National Association of Home Builders

W. Gray Dunlap, Jr. of W. Gray Dunlap, Jr., P.A., St. Petersburg, Florida; and Steven M. Klepper of Kramon & Graham, P.A., Baltimore, Maryland,

     Amici Curiae American Insurance Association, Florida Insurance Council, and Property Casualty Insurers Association of America